**JOHN L. BURRIS, Esq. SBN 69888**
**ADANTÉ D. POINTER Esq. SBN 236229**
**MELISSA C. NOLD, Esq. SBN 301378**
**LAW OFFICES OF JOHN L. BURRIS**
Airport Corporate Centre
7677 Oakport Street, Suite 1120
Oakland, California 94621
Telephone: (510) 839-5200
Facsimile:   (510) 839-3882
john.burris@johnburrislaw.com
adante.pointer@johnburrislaw.com
melissa.nold@johnburrislaw.com

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NANDI CAIN JR., an individual,<br><br>                    Plaintiff,<br><br>     vs.<br><br>CITY OF SACRAMENTO, a municipal corporation; COUNTY OF SACRAMENTO, a municipal corporation; ANTHONY FIGUEROA, in his individual and official capacity as a CITY OF SACRAMENTO Police Officer; DOES 1-50, individually and in their official capacities as Police Officers for the CITY OF SACRAMENTO, jointly and severally; and DOES 1-50, individually and in their official capacities as Deputy Sheriff's and/or employees for the COUNTY OF SACRAMENTO, jointly and severally,<br><br>                    Defendants. | CASE NO.:<br><br>COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND DAMAGES<br><br>JURY TRIAL DEMANDED |

# INTRODUCTION

1. This outrageous incident occurred on April 10, 2017, at approximately 5:00 p.m., as Plaintiff Nandi Cain was peacefully walking home from work, in the Del Paso neighborhood of Sacramento, California. Mr. Cain lawfully crossed the street, but was nevertheless racially profiled and stopped by Defendant City of Sacramento Police Officer Anthony Figueroa. Defendant Officer Figueroa approached Mr. Cain with his hand on his gun and demanded the innocent young man remove his hands from his pockets and get down on the ground. When Mr. Cain had the audacity to question the legality of the unlawful stop and inquire about the probable cause permitting such an intrusion, Defendant Figueroa escalated the encounter and without cause grabbed Mr. Cain by the throat, threw him to the ground and punched him approximately twenty (20) times in the face and head. Mr. Cain was then denied medical care and taken to the Sacramento County Jail, where he suffered further abuse at the hands of his assailant and jailors.

2. Upon entering the jail, Mr. Cain was placed on a psychiatric hold at Officer Figueroa's insistence, forcefully stripped naked, and forced to the ground, while multiple officers, including Officer Figueroa, continued to abuse and degrade the defenseless man. To add insult to injury, after Mr. Cain broke down in tears from his terrifying and surreal ordeal, Defendant Figueroa and other jail staff called Mr. Cain a 'bitch' and said that he was 'crying like a bitch,' in addition to telling Mr. Cain that he 'stank.'  Mr. Cain was eventually released without charges, only to come home to learn that his battery and public humiliation had gone viral, including footage of Mr. Cain crying in the back of the police car.

3. This action seeks to recover damages for the multiple state actions and federal constitutional violations.

# JURISDICTION

4. This action arises under Title 42 of the United States Code, Section 1983.  Title 28 of the United States Code, Sections 1331 and 1343 confers jurisdiction upon this Court.  The unlawful acts and practices alleged herein occurred in Sacramento, California, which is within this judicial district. Title 28 United States Code Section 1391(b) confers venue upon this Court.

## PARTIES

5. Plaintiff herein, NANDI CAIN is, and at all times herein mentioned was a resident of California, readily recognizable as African- American male and a natural person.

6. Defendant CITY OF SACRAMENTO (hereinafter referred to as "CITY") is and at all times mentioned herein a municipal corporation, duly authorized to operate under the laws of the State of California. Under its supervision, the CITY OF SACARAMENTO operates the Sacramento Police Department ("SPD").

7. Defendant COUNTY OF SACRAMENTO (hereinafter referred to as "COUNTY") is and at all times mentioned herein a municipal corporation, duly authorized to operate under the laws of the State of California. Under its supervision, the COUNTY OF SACRAMENTO operates the Sacramento Sheriff's Department ("SSD").

8. Defendant ANTHONY FIGUEROA (hereinafter referred to as "Defendant") is and at all times mentioned herein a natural person. He is being sued in his individual and official capacity as a Police Officer for the CITY OF SACRAMENTO.

9. Plaintiff is ignorant of the true names and/or capacities of defendants sued herein as DOES 1 through 50, inclusive, and therefore sue said defendants by such fictitious names. Plaintiff will amend this complaint to allege their true names and capacities when ascertained. Plaintiff believes and allege that each of the DOE defendants is legally responsible and liable for the incident, injuries and damages hereinafter set forth. Each defendant proximately caused injuries and damages because of their negligence, breach of duty, negligent supervision, management or control, violation of public policy and/or use of excessive force. Each defendant is liable for his/her personal conduct, vicarious or imputed negligence, fault, or breach of duty, whether severally or jointly, or whether based upon agency, employment, ownership, entrustment, custody, care or control or upon any other act or omission. Plaintiff will ask leave to amend his complaint subject to further discovery.

10. In engaging in the conduct alleged herein, defendant police officers acted under the color of law and in the course and scope of their employment with CITY/COUNTY. In engaging in the conduct described herein, Defendant police officers exceeded the authority vested in them as police officers, under the United States and California Constitutions, and as employees of CITY/COUNTY.

STATEMENT OF FACTS

11.  On April 10, 2017, at approximately 5:00 p.m., Claimant Nandi Cane was walking home after a long day's work. After walking several miles, Mr. Cain arrived at the intersection of Cypress Street and Grand Avenue, in the Del Paso Heights neighborhood of Sacramento, California. Cypress Street is an intersection controlled by stop signs at the point where it intersects with Grand Avenue. When Mr. Cain arrived at the corner he looked both ways and lawfully crossed Grand Avenue and proceeded down Cypress Street.

12.  As Mr. Cain was walking down Cypress he heard a car come to a screeching halt behind him and then a car door open. Next, he heard a male voice ask "can I talk to you?" to which Mr. Cain said, 'No' and continued walking without turning around. The man was later identified as City of Sacramento Police Officer Anthony Figueroa. Officer Figueroa told Mr. Cain to take his hands out of his pockets. At this point, Mr. Cain had committed no crime or infraction and was under no lawful obligation to stop whatsoever. However, Mr. Cain put his hands up in the air and tentatively turned around, uncertain who was behind him as Officer Figueroa had failed to identify himself as a police officer. When Mr. Cain turned and faced Officer Figueroa, he saw the Officer had his hand on his gun while aggressively ordering him to get down on his knees.

13.  Mr. Cain asked Officer Figueroa if he had probable cause to stop him. Officer Figueroa fabricated a pre-textual justification for racially profiling the young African American man and claimed Mr. Cain had jaywalked. Mr. Cain told Officer Figueroa that he looked both ways before lawfully crossing at the corner. Nevertheless, Officer Figueroa demanded that Mr. Cain get down on the ground.

14.  At this point, Mr. Cain had committed no infraction or crime and believed that Officer Figueroa was following the longstanding City of Sacramento Police Department tradition of racial profiling by using petty infractions as a pretext to disproportionately stop/search/harass/arrest African-American men. Officer Figueroa asked Mr. Cain if he was armed, despite having no basis for believing Mr. Cain to be armed. In fact, Mr. Cain was completely unarmed and not in possession of any type of weapon or unlawful contraband whatsoever.

15. In an attempt to comply with the Officers' orders, Mr. Cain removed his jacket, discarded it on the street, and showed the palms of his hands. Next, Mr. Cain made a rhetorical comment about the prevalence of racial profiling and informed the Officer that if he wanted to pick a fight the Officer should at least be a man and remove his duty belt and fight Mr. Cain fairly, as opposed to making up false accusations to justify unwarranted police harassment.

16. Without cause, warning or provocation, Officer Figueroa rushed Mr. Cain, violently grabbed him by the throat and threw him to the asphalt. Mr. Cain did not resist. Officer Figueroa then proceeded to straddle Mr. Cain and punch him in the face while continuing to violently choke Mr. Cain. Apparently dissatisfied with only being able to use one fist to inflict unwarranted punishment, Officer Figueroa removed his hand from Mr. Cain's throat and began to punch Mr. Cain with two closed fists as if his head was a punching bag causing Mr. Cain's head to bounce off the concrete. Officer Figueroa punched Mr. Cain approximately 20 times, in and around his face and head. Mr. Cain was so frightened for his life that did not even block the blows to his head out of fear that Officer Figueroa's animalistic rage would escalate into unwarranted deadly force. Soon thereafter, additional yet-to-be-identified City of Sacramento Police Officers arrived on the scene and assisted Mr. Cain's assailant in violently twisting his arms and handcuffing him. The entire incident was recorded on cell phone and dash camera video.

17. Next the Officers put Mr. Cain in the back of a patrol car, where he finally succumbed to the overwhelming feeling of being helpless and abused. His emotions caused him to cry and kick the seats of the patrol car. Mr. Cain was then transported to the City of Sacramento Jail by Officer Figueroa, during which time he feared the Officer was going to drive him to a deserted area and attack him again or kill him. At some point during his transport, Mr. Cain passed out until he was awoken at the Jail.

18. Neither Officer Figueroa nor the other Officers made any efforts to provide medical care to Mr. Cain. Specifically, they failed to summon an ambulance or take him to the hospital for medical clearance before hauling him off to Jail. In fact, Officer Figueroa brutal attack caused Mr. Cain to suffer a concussion and broken nose.

19. When Mr. Cain arrived at the Jail Officer Figueroa took him inside and began processing him into the Jail.  Once inside, Officer Figueroa asked Mr. Cain if he was suicidal. Mr. Cain assumed the officer was continuing his pattern of abuse and harassment and remarked "I don't know." Officer Figueroa continued to repeat the question and Mr. Cain told him, 'No.' A yet-to-be-identified Sacramento County Jail nurse was brought to the intake area and apparently medically cleared the concussed man without any concern for his obvious injuries.  In fact, the nurse failed to request a physician exam Mr. Cain or order an x-ray or cat scan for the battered and bruised man.  Instead, the nurse simply asked Mr. Cain if he was suicidal to which he promptly replied, 'No.' Nevertheless, despite having repeatedly indicated that he was not suicidal and despite having no history of having mental illness, Officer Figueroa insisted that Mr. Cain be placed in an isolation - suicide watch cell to further penalize him for the crime of walking while black.

20. As Officer Figueroa and one yet-to-be-identified Sacramento County Jail employee walked Mr. Cain to the isolation cell, Officer Figueroa painfully contorted Mr. Cain's left arm. Once the three men arrived at the cell, Mr. Cain was taken into the cell and told to get down on his knees. Mr. Cain fully complied and got down on his knees, with one hand on his head, while Officer Figueroa maintained his tight grip on Mr. Cain's left arm. Then Officer Figueroa told Mr. Cain to lay down on the ground. Mr. Cain complied and laid with his face and body on the concrete floor. Despite Mr. Cain's full and total compliance, Officer Figueroa called several yet-to-be-identified Sacramento County Jail employees to the cell.

21. Once the jail employees arrived at the cell they joined Officer Figueroa and attacked Mr. Cain. The men repeatedly kneed Mr. Cain in the ribs and used their knees to pin his body against the floor, while forcefully stripping his clothes off. At no point did any of the men permit Mr. Cain the dignity of removing his own clothes.

22. Mr. Cain attempted to maintain his composure and did not want to move, out of fear that he would be hurt even worse. Nevertheless, the men continued to forcefully pin Mr. Cain's body against the floor.  Although his body was wracked with pain he initially did not cry out as he feared the sadistic group of men would intensify the abuse. When Mr. Cain could not withstand the agony any longer, he cried out.

23. The men maintained their grip on Mr. Cain, who was laying on the ground nude and frozen with fear. He was frightened that his sadistic attackers were preparing to sexually assault him. He clenched his buttocks muscles with all his might, in a feeble attempt to prevent an anticipated sexual assault.

24. Finally, after Mr. Cain was emasculated, naked and sobbing on the floor, the men released their grip. Apparently not satisfied by just stripping, abusing and humiliating Mr. Cain, the men began to call him a 'bitch' and said that he was 'crying like a bitch,' in addition to telling Mr. Cain that he his naked body 'stank.' After robbing Mr. Cain of his manhood and basic human dignity, the men left him alone in his cell, without medical attention, food or the opportunity to make a phone call.

25. On April 11, 2017, at approximately 2:00 a.m., nine hours after the beginning of his terrifying ordeal, Mr. Cain was unceremoniously released from Jail. He was forced to wonder the streets of Sacramento looking for a way to get home until he found a 24-hour business which permitted him to use the phone to summon a ride.

26. No charges were filed against Mr. Cain.

27. Plaintiff is informed and believes and thereon alleges that CITY/COUNTY, and DOES 26-50, inclusive, breached their duty of care to the public in that they have failed to discipline Defendants and DOES 1-25 inclusive, for their respective misconduct and involvement in the incident described herein. Their failure to discipline Defendants and DOES 1-25 inclusive, demonstrates the existence of an entrenched culture, policy or practice of promoting, tolerating and/or ratifying with deliberate indifference, the use of racial profiling, excessive force and the fabrication of official reports to cover up Defendants and DOES 1-25's inclusive, misconduct.

28. Plaintiff is informed, believes and thereon alleges that members of the CITY/COUNTY Police/Sheriff's Department, including, but not limited to Defendants and DOES 1-25 inclusive and/or each of them, have individually and/or while acting in concert with one another used excessive, arbitrary and/or unreasonable force against and racially profiled Nandi Cain in a manner prohibited by the United States Constitution.

29. Plaintiff is further informed, believes and therein alleges that as a matter of official policy –

rooted in an entrenched posture of deliberate indifference to the constitutional rights of persons who live, work or visit the CITY/COUNTY of SACRAMENTO, SPD/SSD has allowed persons to be abused and racially profiled by its employees including Defendants and DOES 1-25 and/or each of them, individually and/or while acting in concert with one another.

30. Plaintiff is further informed, believes and therein alleges that CITY OF SACRAMENTO is in possession of statistical data which confirms that CITY OF SACRAMENTO Police Officers disproportionately stop and cite African American pedestrians for 'jaywalking' at a rate greatly disproportionate to the per capita representation of African Americans within the population of the City of Sacramento. Plaintiff further alleges that despite being aware of the existence of racially biased enforcement of 'jaywalking' laws, Defendant CITY has failed to remedy said violations and/or retrain CITY employees to prevent racially biased enforcement of laws.

31. Plaintiff is informed, believes and therein alleges that SPD/SSD employees exhibit a pattern and practice of using racial profiling and excessive force against citizens and despite these incidents, none of the employees are ever found in violation of department policy, even under the most questionable of circumstances. SPD/SSD's failure to discipline or retrain any of the involved employees is evidence of an official policy, entrenched culture and posture of deliberate indifference toward protecting citizen's rights and the resulting deaths and injuries is a proximate result of SPD/SSD's failure to properly supervise its employees and ratify their unconstitutional conduct.

32. Plaintiff is informed, believes and therein alleges that CITY/COUNTY knew, had reason to know by way of actual or constructive notice of the aforementioned policies, culture, pattern and/or practice and the complained of conduct and resultant injuries/violations.

33. Plaintiff is ignorant of the true names and capacities of Defendant Officers DOES 1 through 25, inclusive, and therefore sue these Defendants by such fictitious names. Plaintiffs are informed, believes, and thereon alleges that each Defendant so named is responsible in some manner for the injuries and damages sustained by Plaintiffs as set forth herein. Plaintiffs will amend their complaint to state the names and capacities of DOES 1-50, inclusive, when they have been ascertained.

## DAMAGES

34. Plaintiff was physically and emotionally injured and damaged as a proximate result of

Plaintiff's egregious beating, including but not limited to: Defendants' violation of Plaintiff's federal civil rights under 42 U.S.C. §1983 and the Fourteenth Amendment.

35. Plaintiff found it necessary to engage the services of private counsel to vindicate his rights under the law. Plaintiff is therefore entitled to an award of attorneys' fees and/or costs pursuant to statute(s) in the event that they are the prevailing parties in this action under 42 U.S.C. § 1983, and 1988.

## FIRST CAUSE OF ACTION

**Violation of Fourth Amendment of the United States Constitution**

**(42 U.S.C. §1983)**

**(Plaintiff v. FIGUEROA and DOES 1-25 inclusive)**

36. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 35 of this complaint. Defendants' above-described conduct violated Plaintiff Cain's rights, as provided for under the Fourth Amendment to the United States Constitution, to be free from excessive and/or arbitrary and/or unreasonable use of force against him and/or unreasonable and biased enforcement of law.

37. Plaintiff Cain was forced to endure great conscious pain and suffering because of the Defendants' racially biased, unwarranted and unprovoked attack;

38. Defendants acted under color of law by unlawfully contacting and beating Plaintiff Cain without lawful justification and subjecting Plaintiff to excessive force thereby depriving him of certain constitutionally protected rights, including, but not limited to:

   a. The right to be free from unreasonable searches and seizures, as guaranteed by the Fourth Amendment to the United States Constitution;

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

## SECOND CAUSE OF ACTION

**(Monell – 42 U.S.C. section 1983)**

**(Plaintiff v. CITY; COUNTY and DOES 26-50)**

39. Plaintiff hereby re-alleges and incorporates by reference herein paragraphs 1 through 38 of

this Complaint.

40. Plaintiff is informed and believes and thereon alleges that high-ranking CITY/COUNTY officials, including high-ranking police and/or sheriff deputy supervisors and DOES 26 through 50, and/or each of them, knew and/or reasonably should have known about the repeated acts of unconstitutional excessive force by SPD/SSD Officers.

41. Despite having such notice, Plaintiff is informed and believes and thereon alleges that CITY/COUNTY & DOES 26-50, and/or each of them, approved, ratified, condoned, encouraged, sought to cover up, and/or tacitly authorized the continuing pattern and practice of misconduct and/or civil rights violations by SPD/SSD which brought about Defendants and DOES 1-25 unlawfully beating Nandi Cain.

42. Plaintiff is further informed and believes and thereon alleges that as a result of the deliberate indifference, reckless and/or conscious disregard of the misconduct by Defendants and DOES 1-25 and/or each of them, ratified and encouraged these officers to continue their course of misconduct.

43. Plaintiff further alleges that Defendant DOES 26-50, and/or each of them, were on notice of the Constitutional defects in their training of SPD/SSD police officers, including, but not limited to unlawfully using excessive force to make detentions and/or arrests.

44. The aforementioned acts and/or omissions and/or deliberate indifference by high ranking CITY/COUNTY officials, including high ranking SPD/SSD supervisors, DOES 26-50, and each of them resulted in the deprivation of Plaintiff's constitutional rights including, but not limited to the right to not be deprived of life, liberty or property without due process of the law, as guaranteed by the Fourteenth Amendment to the United States Constitution and the right to be free from excessive force by police officers and/or sheriff deputies, as guaranteed by the Fourth Amendment to the United States Constitution.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

## JURY DEMAND

45. Plaintiff hereby demands a jury trial.

## PRAYER

WHEREFORE, Plaintiff prays for relief, as follows:

1. For general damages in a sum to be determined at trial;

2. For special damages, including but not limited to, past, present and/or future wage loss, income, medical expenses and other special damages in a sum to be determined according to proof;

4. For punitive damages and exemplary damages in amounts to be determined according to proof as to defendant DOES 1 through 25 and/or each of them;

5. Any and all permissible statutory damages;

6. For reasonable attorney's fees pursuant to 42 U.S.C. §1988 and U.S.C. §794a; and

7. For cost of suit herein incurred.

**Dated:  April 23, 2017**                                    **THE LAW OFFICES OF JOHN L. BURRIS**

*/s/ John L. Burris*
 **JOHN L. BURRIS**
 **Attorneys for Plaintiff**